```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DAVID ROGINSKY,

                 Plaintiff,
                                              MEMORANDUM & ORDER
        v.
                                              17-cv-5559 (KAM)
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
----------------------------------X
```
**MATSUMOTO, United States District Judge**:

        David Roginsky ("Roginsky" or "Plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") finding him ineligible for disability insurance benefits under Title II of the Social Security Act (the "Act") on the grounds that he could perform work which existed in the national economy. Before the Court are the parties' cross-motions for judgment on the pleadings, in which Plaintiff seeks a remand and Defendant seeks an order affirming the Commissioner's decision. For the reasons set forth below, the Court DENIES Defendant's motion, GRANTS Plaintiff's motion, and REMANDS this action for further proceedings consistent with this Memorandum and Order.

## Background

### I. Procedural History

    On December 30, 2013, Roginsky filed an application for disability insurance benefits. (ECF No. 16, Administrative

Transcript ("Tr."), at 67.) Roginsky alleged disability beginning October 3, 2013, due to, *inter alia*, a learning disability and right knee condition. (*Id.* at 140-141, 164.)

On May 9, 2014, the Social Security Administration ("SSA") denied Roginsky's application for disability insurance benefits and supplemental security income on the basis that Roginsky did not qualify as "disabled" within the meaning of the Act. (*Id.* at 70-73.) Roginsky requested a hearing before an ALJ. (*Id.* at 82-83.)

On March 3, 2016, Roginsky appeared for a hearing before ALJ Patrick Kilgannon. (*Id.* at 30-56.) Following the hearing, ALJ Kilgannon issued a decision finding Roginsky not disabled within the meaning of the Act and, as a result, not entitled to social security benefits. (*Id.* at 12-29.)

On July 19, 2016, Roginsky requested review of ALJ Kilgannon's decision. (*Id.* at 130.) The Appeals Council denied Roginsky's request for review, making ALJ Kilgannon's decision the final decision of the Commissioner. (*Id.* at 1-6.) This action followed. (*See generally* ECF No. 1, Compl.)

II. **Relevant Evidence**

Roginsky's principal argument on appeal is that in assessing his residual functional capacity ("RFC"), ALJ Kilgannon accorded great weight to the opinion of Dr. Louis A. Fuchs ("Dr. Fuchs"), but disregarded, without explanation, the

2

portion of Dr. Fuchs' opinion noting that Roginsky could not sit, stand, or walk for more than one hour at a time. The Court's Memorandum and Order thus summarizes only those facts relevant to whether ALJ Kilgannon erred in disregarding that portion of Dr. Fuchs' opinion.

On April 4, 2016, ALJ Kilgannon served a set of medical interrogatories on Dr. Fuchs and requested his professional opinion in connection with Roginsky's claim. (Tr. 452-64.) Dr. Fuchs did not examine Roginsky, but instead answered ALJ Kilgannon's interrogatories based on his review of Roginsky's medical record. (*See id.* at 475.) Dr. Fuchs' response, dated April 15, 2016, notes the following findings:

- Lifting/Carrying: Roginsky could lift up to ten pounds continuously; lift eleven to twenty pounds occasionally; carry up to ten pounds continuously; and carry eleven to twenty pounds occasionally. (*Id.* at 467.)

- Sitting/Standing/Walking: Roginsky could sit, stand, and walk for up to one hour at a time without interruption; sit for a total of eight hours in a day; stand for a total of two hours in a day; and walk for a total of two hours in a day. (*Id.* at 469.)

- Use of Hands: Roginsky could continuously reach, handle, finger, feel, push, and pull. (*Id.* at 470.)

- Use of Feet: Roginsky could use foot controls occasionally with his right foot and continuously with his left foot. (*Id.*)

- Postural Activities: Roginsky could occasionally climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. (*Id.* at 471.)

3

- <u>Environmental Limitations</u>: Roginsky could be continuously exposed to unprotected heights and moving mechanical parts; could continuously operate a motor vehicle; could occasionally be exposed to humidity and wetness, or extreme heat or cold; and could never be exposed to vibrations. (*Id.* at 472.)

ALJ Kilgannon afforded "great weight" to Dr. Fuchs' opinion, noting that Dr. Fuchs "examined the record in its entirety, has a specialty in the field of orthopedics and arrived at conclusions constituent with the record as a whole." (*Id.* at 22.) ALJ Kilgannon cited Dr. Fuchs' as opining that "during the course of an eight-hour workday, [Roginsky] retained the ability to sit for 8 hours, stand for 2 hours[,] and walk for 2 hours, and occasionally lift/carry up to 20 pounds. In addition, he found [that Roginsky] could occasionally engage in postural activities and continuously use his hands." (*Id.*) ALJ Kilgannon did not, however, cite the portion of Dr. Fuchs' opinion indicating that Roginsky could not sit, stand, or walk for more than one hour at a time. (*See id.*)

## **Standard of Review**

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have

4

justifiably reached a different result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).  Rather, "'[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'"  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

"Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## **Discussion**

**I. The Commissioner's Five-Step Analysis of Disability Claims**

A claimant must be "disabled" within the meaning of the Act to receive disability benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32. The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner prescribe a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4). If the answer at any of the previously mentioned steps is "no," the analysis stops and the ALJ must find that the claimant does not qualify as disabled under the Act.

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted). "However, [b]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (internal quotation marks omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform her past relevant work [and considering her residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational

background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).  If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

**II.  ALJ Kilgannon's Application of the Five-Step Analysis**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, ALJ Kilgannon made the following determinations:

At step one, ALJ Kilgannon found that Roginsky had not engaged in substantial gainful activity since October 3, 2013, the alleged onset date of Roginsky's disability.  (Tr. 17.)

At step two, ALJ Kilgannon found that Roginsky suffered from the following "severe" impairments:  right knee impairment, hand tremors, obesity, and learning disability.  (*Id.*)  ALJ Kilgannon also found that Roginsky suffered from several "non-severe" impairments:  hypertension, sleep apnea, and depression/adjustment disorder.  (*Id.* at 17-18.)  ALJ Kilgannon noted that a consultative examiner, Rachel Felsenfeld, Ph.D., examined Roginsky and diagnosed him with an adjustment disorder with depressed mood and learning disability.  (*Id.* at

8

18.) ALJ Kilgannon did not, however, perform the psychiatric review technique as mandated by 20 C.F.R. § 404.1520a.[1]

At step three, ALJ Kilgannon considered Listings 1.02 (major disfunction of a joint) and 12.05 (intellectual disorder) but determined that Roginsky did not have an impairment, or combination of impairments, that meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.* at 18-19.)

At step four, ALJ Kilgannon concluded that Roginsky could not perform his past relevant work as a Patient Transporter. (*Id.* at 23.) ALJ Kilgannon did, however, find that Roginsky could perform "sedentary" work with the following limitations: no climbing ladders, ropes or scaffolds; occasional climbing ramps and stairs; occasional crouching, crawling, balancing, stooping, and kneeling; frequent handling, fingering, and feeling with bilateral extremities; no hazards such as moving machinery and unprotected heights; and only unskilled tasks. (*Id.* at 19.)

At step five, ALJ Kilgannon concluded that Roginsky could perform jobs available in substantial numbers in the national economy, including Addresser, Document Preparer, and Surveillance System Monitor. (*Id.* at 24.) Thus, ALJ Kilgannon

---

[1] Although the Court remands on other grounds, the Commissioner should be mindful on remand that he must assess Roginsky's mental impairments pursuant to the Special Technique, as required by 20 C.F.R. § 404.1520a.

9

found that Roginsky did not qualify as disabled within the meaning of the Act. (*Id.*)

### III. ALJ Kilgannon's Error in Applying the Five-Step Analysis

    a. <u>ALJ Kilgannon Provided an Incomplete RFC Assessment</u>

Roginsky argues that ALJ Kilgannon erred by concluding that Roginsky could perform sedentary work, despite the fact that Dr. Fuchs found Roginsky unable to sit, stand, or walk for more than one hour at a time. The Court cannot meaningfully review ALJ Kilgannon's decision in this regard because, contrary to applicable regulations, ALJ Kilgannon did not set forth the restrictions applicable to Roginsky's work-related abilities on a function-by-function basis.

An ALJ assessing a claimant's RFC "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996)). "[T]he ALJ [must] include in his RFC assessment a 'function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis.'" *Palascak v. Colvin*, No. 11-CV-0592(MAT), 2014 WL 1920510, at *10 (W.D.N.Y. May 14, 2014) (quoting *Zurenda v. Astrue*, No. 11-CV-1114

(MAD/VEB), 2013 WL 1183035, at *4 (N.D.N.Y. Mar. 1, 2013), *report and recommendation adopted*, 2013 WL 1182998 (N.D.N.Y. Mar. 21, 2013)). "[T]he ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing 20 C.F.R. §§ 404.1513(c)(1), 404.1569a(a), 416.969a(a); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)). "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8P; *see also, e.g., Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 348–49 (E.D.N.Y. 2010).

ALJ Kilgannon's decision relied on Dr. Fuchs' opinion that Roginsky could sit for up to 8 hours a day. But ALJ Kilgannon did not address the accompanying limitation that Roginsky could not sit, stand, or walk for more than one hour at a time. Without ALJ Kilgannon's reasoning on this point, the Court cannot conclude whether ALJ Kilgannon assessed no such limitations in Roginsky's ability to sit, stand, or walk for more than one hour at time or, alternatively, failed to properly consider Dr. Fuchs' opinion. As ALJ Kilgannon failed to properly explain his reasoning, the Court cannot adequately

review his findings and remand is appropriate.[2] *See, e.g.*, *Welch v. Comm'r of Soc. Sec.*, No. 17-CV-6764 (JS), 2019 WL 4279269, at *3 (E.D.N.Y. Sept. 10, 2019); *see also* SSR 96-8P ("[A] failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions."); *Cichocki*, 729 F.3d at 177 ("Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.").

  b. <u>ALJ Kilgannon's Finding that Roginsky Could Perform Frequent Handling & Fingering</u>

Roginsky also argues that ALJ Kilgannon erred in failing to consider the evidence in the record relating to Roginsky's severe hand tremors. ALJ Kilgannon found that Roginsky's hand tremors qualified as a "severe" impairment. (Tr. 17.) But Roginsky incorrectly states that ALJ Kilgannon

---

[2] The Commissioner cites to other evidence in the record which he argues supports ALJ Kilgannon's decision, and specifically, to the testimony of Dr. Caiati, Dr. Famulare, and Dr. Goodwillie. (ECF No. 14, Commissioner's Mot. for J. on the Pleadings, at 17.) ALJ Kilgannon accorded limited weight to the opinions of each of the cited physicians. (Tr. 21-22.) Although the Commissioner attempts to rationalize how ALJ Kilgannon could have accepted some portions of these physicians' opinions – *i.e.*, those related to Roginsky's limitations in sitting, standing, and walking – the Court cannot accept such *post hoc* rationalizations given the lack of any corresponding discussion in ALJ Kilgannon's decision. *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court "'may not accept appellate counsel's post hoc rationalizations for agency action.'" (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999))).

identified no evidence in support of his finding that, despite this severe impairment, Roginsky could frequently handle, finger, and feel bilaterally despite the hand tremors. ALJ Kilgannon cited Dr. Fuchs' opinion that Plaintiff could continuously use his hands to support his finding regarding Plaintiff's ability to use his hands. (*Id.* at 22.) The only other opinion in the administrative record addressing Roginsky's use of his hands was the opinion of psychologist Stephen Kaplan ("Dr. Kaplan"), which ALJ Kilgannon rejected as outside the area of Dr. Kaplan's specialty. (*Id.* at 22.) As Dr. Kaplan is not a physician, physiatrist, physical therapist, or qualified in any manner to issue opinions as to physical impairments, the Court cannot say that ALJ Kilgannon erred in giving little weight to Dr. Kaplan's findings regarding Roginsky's physical status. In any event, as Dr. Fuchs is a non-examining source and there is no proper opinion in the record from an examining source discussing Roginsky's hand tremors, the Court directs that, on remand, ALJ Kilgannon seek an opinion from an examining source as to the effects Roginsky's hand tremors may have on his manipulative limitations.

## Conclusion

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings where appropriate. 42 U.S.C. § 405(g) ("The court shall have

13

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted)). Remand is particularly appropriate where, as here, further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. The Court finds that ALJ Kilgannon failed to explain his findings and REMANDS this action for further proceedings consistent with this Memorandum and Order.
**SO ORDERED.**

Dated:   Brooklyn, New York
         January 28, 2020

/s/
Hon. Kiyo A. Matsumoto
United States District Judge
